Shaw C. J.
delivered the opinion of the Court. This action being brought to recover a total loss, on a policy upon a vessel, without abandonment, the only question upon this point was, whether the ship was sold under such circumstances of inevitable necessity, as in other cases has been held sufficient to warrant a sale by the master ; whether that sale under the circumstances was valid to pass the property to the purchaser, *287 and thereby wholly to divest the title of the original owners, the plaintiffs in the present case. The subject had been so recently discussed, and the rules in relation to the agency forced upon the master by the necessity of breaking up the voyage and determining the enterprise, with the limitations and qualifications of these rules, had been considered so much at large, in the case of Gordon v. The Mass. Fire and Marine Ins. Co., 2 Pick. 249, that the judge who tried the cause took that case as his guide in the present.
The main question discussed at the bar, in the present case, was a question of fact upon the evidence, and whether the verdict was against the weight of the evidence. Upon this point, after considering the evidence, the Court were of opinion that there was no ground to set the verdict aside for this cause, that the evidence was quite sufficient to support the verdict, which was for the defendants, so far as to determine that the sale of the vessel was not necessary, that an agency was not forced upon the master, and a sale by him was not authorized and valid.
Several exceptions were taken by the plaintiffs’ counsel to the directions of the Court to the jury in point of law, which have been submitted to the Court on this report.
1. That the jury were instructed, that if they believed from the evidence, that the facts stated in the survey were not true, they were not to give effect to the survey ; whereas they should have been so instructed only in the event of finding material facts not true. The Court are of opinion, that this exception is not sustained.
Without placing much weight upon the obvious consideration, that all such general observations must be presumed to have been made with qualifications and restrictions arising out of the subject, it appears in this case by the report, that immediately after the direction excepted to, the judge proceeded to call the attention of the jury to the facts, first of the sufficiency, thoroughness and accuracy of the survey, and then of the truth of those material facts of damage, difficulty of procuring labor and materials, and costs of reparation, which were the material facts upon which the surveyors founded their conclusion, that a sale was necessary. The survey itself had been *288 admitted in evidence by consent; it was upon the survey tha plaintiffs mainly rested the justification of the master in making the sale, and most of the evidence was brought to bear upon the two questions, of the sufficiency of the survey, and the truth of the facts contained in it. It was the great question involved in the issue between the parties. In leaving to the jury therefore to inquire whether the survey was sufficient, and whether the facts stated in it were true, the jury must necessarily have understood the direction as applying to those naterial facts, which if true constituted the master’s justification and authority, and they could not have been misled by the generality of the terms of the proposition, with which this part of the instructions of the judge to the jury commenced.
2. That in estimating the costs of repair, and determining the question, whether they would or would not amount to half the value of the vessel, the valuation in the policy was to be taken as the true value. Without stopping to consider whether, as a general rule, the valuation in the policy is to be taken as the true value of the vessel, for the purpose of determining whether it will cost more than half her value to repair, we think it a sufficient answer to the exception in this case, that no evidence of a different value of the ship at the time and place of proposed repair was offered, or any different rule of valuation claimed. In the case cited, The Patapsco Insurance Company v. Southgate, 5 Peter’s Sup. Ct. R. 604, the question was not upon a valued policy ; the question was whether the value at the place of proposed repair, or at the home port, should be taken for this purpose. In this case the trial appears to have proceeded on both sides, on the assumption that the valuation was the true value ; and the instruction of the Court merely went on the ground, that prima facie and in the absence of other evidence, the sum agreed on in the policy, as the value of the vessel, is the true value ; to which we think there could be no exception. Upon the more general question, whether in a valued policy, the valuation is conclusive, at all places and times during the continuance of the risk, for the purpose of applying the rule of repairs costing more than one half of the value, we give no opinion.[1]
*289 3. That the judge instructed the jury, that in applying this rule, they were to take not the gross amount of repairs, but the amount expended for repairs, after deducting one third new for old, and that the amount after this deduction must exceed one half of the value of the vessel, to warrant an abandonment.
Whether this is the true rule upon general principles, has been the subject of some discussion; but we think that the parties intended to preclude any such discussion in this case, and have done so by the terms of their contract. It stipulates, that the assured shall not have the right to abandon the vessel for the amount of damages merely, unless the amount which the assurers would be liable to pay, under an adjustment as of a partial loss, shall exceed half the amount insured.
Here the vessel being valued at $8500, the sum insured $ 2250, in case of partial loss, the sum which the underwriter would have to pay, would be the same proportion of the whole damage, which 2250 bears to 8500. The question is the same therefore as if the defendants were insurers to the whole amount. It may be assumed, that if the loss was not of such a nature as to warrant an abandonment, a fortiori was it not such a case of irresistible necessity, as to warrant a sale by the master. The question then was, how would this loss be adjusted as a partial loss, and in that event what would the underwriter have to pay ? .The vessel was so damaged that she could not sail without repairs ; if she could not be repaired at St. Thomas, or elsewhere, it was an actual total loss, independent of any abandonment or sale. If she could be repaired, then it would resolve itself into a question of amount. The. policy prescribes a rule by which this is to be ascertained. It must amount to such a sum, that the underwriter would have to pay over $4250, on adjustment as of a partial loss. But upon such adjustment, there must be a deduction of one third new for old. The repairs must then exceed $6375, before the amount, which the underwriter would be liable to pay upon an adjustment as of a partial loss, would exceed one half of the *290 amount insured, and therefore before the assured, under this policy, would have a right to abandon the vessel, for the amount of damage or cost of repair. I believe this clause in the policy is of modern origin, and I am not aware that it has been the subject of much discussion or adjudication. It seems to have been designed to settle, by the terms of the contract, a question which had been left unsettled by the general law of insurance.[1]
4. It was objected, that the jury were incorrectly instructed when they were directed to consider how an owner would have acted under like circumstances ; that this is not a true test to try the correctness of the master’s conduct, because an owner may do as he pleases with his own property, but a master is an agent, and not at liberty to subject the property to unusual or extraordinary perils. There are undoubtedly points of difference between the condition and powers of a master, and those of an owner. But it does not appear to the Court that it was •intended to suggest to the jury, that the parallel was complete in all particulars. It is the well known rule on this subject, that to warrant a sale, it must be made to appear to the satisfaction of the jury, not only that there was an actually existing, inevitable necessity for breaking up the voyage and abandoning the ship, but that in determining upon that measure, the master acted with competent skill and judgment, with due care, diligence and attention, and with strict fidelity. In testing the conduct of the master in these particulars, it seems to the Court not an unfit illustration, to inquire how an owner, interested to the amount of the property, would act under like circumstances. It is at least a test of the honesty and sincerity, the zeal and perseverance wdth which he acts, for the benefit of those concerned in the preservation of the property under his charge ; and with this view, it appears to us to • have been used. In the case already cited for another purpose, The Patapsco Insurance Co. v. Southgate, 5 Peters’s Sup. Ct. R. *291 604, a similar illustration was given by the court to the jury at the trial, and seems to have received the approbation of the Supreme Court. The judge said, after stating that if a sale was necessary, &c., 66 and that a prudent and discreet owner, placed in like circumstances, would have come to the same conclusion, and sold the vessel in like manner; and if,” &c. We think, that in referring the jury to the conduct of an owner, they must have understood the judge as referring to a prudent and discreet, and not to a rash or careless one. Then it comes to the common rule in regard to skill and diligence, where they are required, that it shall be that degree which a man of ordinary care and skill, conversant with the subject, would apply to his own affairs, under like circumstances.[1]
5. But lastly, the plaintiffs object to the verdict as irregular, and one upon which no judgment can be given, and move the Court to set it aside and grant a new trial. We should certainly be much surprised at this exception, but for the assurance of the counsel for the plaintiffs, that they did not mean to consent and did not suppose that they were consenting to any mode of trial, different from the ordinary course prescribed by law. In insurance causes, it is often of great convenience to the parties, the counsel and the court, to try the question of liability separately, reserving the evidence and all questions of law and fact in relation to the particular mode of adjustment, to be arranged afterwards; and for this purpose and to render the verdict effectual, it is usually agreed, either that the verdict be taken for a given sum, to be enlarged or reduced by an assessor or referee, subject to the order of court, or as in the present case, by assenting that the verdict be taken in general terms for a total or partial loss, to be amended and entered afterwards, conformably to the report of an assessor or *292 otherwise as agreed. When this is done by consent of parties, there can be no objection to it, but on the contrary, it tends to simplify and facilitate the trial of causes, usually involving many complicated questions. Such course seems to be practised in England. Hudson v. Majoribanks, 7 Moore, 463.
In the present case, it appears that at the commencement of the trial, the Court observed that it might be most convenient for the jury to decide only the question whether the loss was total or partial, and if in their opinion it was a partial loss only, assessors might be appointed to state the loss. The counsel for the plaintiffs then observed, that they went for a total loss and had nothing to ■ do with a partial loss. And in point of fact no statement or computation of any partial loss was offered, and no proof of particulars was given, by which a partial loss could have been adjusted by the jury. We are of Opinion, that from these remarks, the Court were correct in considering as they did, that this, the usual course of proceeding, was assented to by the plaintiffs’ counsel; and if they did not mean to be so understood, they should have expressed their dissent explicitly. Besides, it is to be considered, that it is a well settled rule of law, that on a declaration for a total loss, the plaintiff may recover for a total or partial loss, according to his proof; and the common form of declaration is for a total loss. It follows of course, that a general verdict on such declaration and judgment upon it, would be a bar to any further action, as well for a partial as for a total loss. Therefore as the plaintiffs did not go for a partial loss, and in the opinion of the jury failed to establish a claim for a total, the result would have been, but for the power reserved of appointing an assessor, that the defendants would have been entitled to a general verdict which would have been a perpetual bar to all claim. So that the reservation of the right to appoint an assessor to adjust the partial loss, was a provision for the benefit of the plaintiffs.
Under these circumstances, when there has been a full and fair trial upon the merits, and a verdict, to which no valid exception can be shown, we think it would not be consistent with the plain principles of justice, to set it wholly aside and throw the whole open again, on account of the mistake or misapprehension of counsel. But if the plaintiffs’ counsel, through *293 any misapprehension of the course proposed at the trial, were led to forbear offering evidence and going into a computation of a partial loss, we see no difficulty in affording relief, by setting aside the verdict upon suitable terms, and ordering a new trial, for the assessment of damages only. There are many cases so situated, that it would be highly proper to grant a new trial as to a particular point, or for the purpose of correcting a particular error or mistake. Hutchinson v. Piper, 4 Taunt. 555. This is analogous to the case of judgments, awards ara other legal proceedings, good in part and bad in part, where the court will, if the position of the cause will admit of it, preserve that which is good, and correct that only which is erroneous.
In this case, if the plaintiffs have acted under a misapprehension of their rights at the trial, and are desirous of going to the jury for the purpose of assessing the damages only, as upon a partial loss, the verdict will be set aside and a new trial granted for that purpose only, the plaintiffs consenting that a verdict shall be entered for a partial loss, and the inquiry before the jury be confined to the question of amount; otherwise an assessor will be appointed to adjust the partial loss, agreeably to the provision in the verdict.[1]

Plaintiffs elected a new trial upon the terms proposed.

 See 2 Phillips on Ins. (2d ed.) 273; Deblois v. Ocean Ins. Co. 16 Pick 303; *289 Orrok v. Commonwealth Ins. Co. 21 Pick. 456; Hall v. Ocean Ins. Co. ibid. 472; Bradlie v. Maryland Ins. Co. 12 Peters’s Sup. Court R. 378; Allen v. Lugrue, 8 Barn. & Cressw. 561.

 Reynolds v. Ocean Ins. Co. 22 Pick. 196; Pezant v. National Ins. Co. 15 Wend. 453; Somali v. United States Ins. Co. 11 Pick. 90; Deblois v. Ocean Ins. Co. 16 Pick. 303. But see 2 Phillips on Ins. (2d ed.) 276; Bradlie v. Maryland Ins. Co. 12 Peters’s Sup. Ct. R. 399; Robinson v. Commonwealth Ins. Co. 3 Sumner, 225.

 Robinson v. Commonwealth Ins. Co. 3 Sumner, 227. As to the authority of the master to sell the vessel, see Peirce v. Ocean Ins. Co. 13 Pick. 83; Bryant v. Commonwealth Ins. Co. 13 Pick. 543; American Ins. Co. v. Ogden, 15 Wend. 539; Gardner v. Salvador, 1 Mood. & Rob. 116; Idle v. Royal Exch. Ass. Co. 3 Moore, 115; Robertson v. Clarke, 8 Moore, 622; Somes v. Sugrue, 4 Car. & P. 276; Alien v. Sugrue, 8 Barn. & Cressw. 561; Read v. Bonham, 6 Moore, 397; Cambridge v. Anderlon, 4 Dowl. & Ryl. 203; The Sarah Ann, 2 Sumner, 206; New England Ins. Co. v. Sarah Ann, 13 Peters’s Sup. Ct. R 287.

 See Robbins v. Townsend, 20 Pick. 345; Sprague v. Bailey, 19 Pick 436